UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROETTGEN, CDCR #V-05142,<br><br>                         Plaintiff,<br><br>vs.<br><br>DANIEL PARAMO, Warden, et al.,<br><br>                        Defendants. | Case No.: 3:21-cv-01285-CAB-BLM<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**AND**<br><br>**2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT AND SUMMONS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

      Plaintiff John Roettgen, currently incarcerated at California State Prison-Sacramento ("CSP-SAC"), and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1. Roettgen claims various prison officials at Richard J. Donovan Correctional Facility ("RJD") violated his First and Fourteenth Amendment rights while he was incarcerated there in July through September 2017. *Id.* at 1, 13–24. He seeks $500,000 in compensatory and punitive damages. *Id.* at 24-25.

Roettgen did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) when he filed his Complaint; instead, he filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes,* 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of his IFP Motion, Roettgen has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by an accounting officer at CSP-SAC. *See* ECF No. 2 at 4, 6–9; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Roettgen has carried an average monthly balance of $306.74 and had an average monthly deposit of $170.04 to his account over the 6-month period immediately preceding the filing of his Complaint. He maintained an available balance of $330.59 at the time of filing. *See* ECF No. 3 at 4, 7.

Based on this accounting, the Court **GRANTS** Roettgen's Motion to Proceed IFP (ECF No. 2) and assesses an initial partial filing fee of $61.34 pursuant to 28 U.S.C. § 1915(b)(1). However, this initial fee need be collected only if sufficient funds are available in Roettgen's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 577 U.S. at 86; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of Roettgen and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

**II.      Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

A.      <u>Standard of Review</u>

Because Roettgen is a prisoner and is proceeding IFP, his Complaint also requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants

who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B.   <u>Factual Allegations</u>

Roettgen was incarcerated at RJD from 2009 through 2017, and during that time filed three separate civil rights lawsuits alleging excessive force and retaliation on the part of correctional officials including Defendants Renteria, Romero, and Valdovino whom he claims are "known as the Dirty Three on C [yard]." *See* Compl. at 11–13. Roettgen further "generated many administrative appeals documenting the abuse" and

also claims he became the "target" of the "Dirty Three" and other RJD correctional officials after he was interviewed by an investigator for the Public Defender's Office in San Diego as a witness to other inmate assaults on the yard. *Id.* at 13. According to Roettgen, this "just added more wood to the fire." *Id.*

After a fellow inmate named Moody assaulted a correctional counselor on July 17, 2017, a facility-wide lockdown was imposed and "yard-wide" searches for weapons commenced. *Id.* at 14. On July 21, 2017, Roettgen was escorted "right past C/O Romero" by an Investigative Services Unit ("ISU") Officer to serve "as a witness [against] Officer [] Romero" related to a March 31, 2017 assault against an fellow inmate named Ayala. *Id.* Roettgen claims he "learned later that it was common knowledge to the staff that [he] was speaking to Internal Affairs ("IA") about that incident." *Id.* at 16.

While Roettgen was being interviewed, he claims "staff was busy wrecking" his housing unit in Building 14, and shortly after, he was placed into restraints and taken to a holding cage in the gym. *Id.* at 16. Seven hours later, he was taken to Administrative Segregation ("Ad-Seg") and informed that a Rules Violation Report ("RVR") was being issued against him for possessing the deadly weapon allegedly discovered in his cell "while he was being interviewed." *Id.* While he was still in the gym, Roettgen claims the Dirty Three entered, Romero "thumped his chest plate with a fist," and told Roettgen: "I put that shit there." *Id.* at 16. Roettgen claims Valdovino added: "Yeah, tell that shit to IA." *Id.* The three then "laughed and walked away." *Id.*

In Counts One and Two, Roettgen alleges Romero, Renteria, and Valdovino violated his First and Fourteenth Amendment rights by stealing his property and "plant[ing] a dangerous weapon in [his] cell in retaliation for [his] testifying against them," reporting their "misbehavior," and filing complaints against them. *Id.* at 19–20; *see also* Decl. in Supp. of Compl., ECF No. 1 at 26–29. In Count Three, Roettgen claims Defendants McWay, Garcia, Covel, Cortez, and Paramo violated his Fifth and Fourteenth Amendment rights during the RVR hearing related to the July 21, 2017 falsified weapons

///

charges.[2] *Id.* at 21–22. In Count Four, Roettgen claims Defendants Paramo and Frijas violated his First and Fourteenth Amendment rights by changing a September 14, 2017 Inmate Classification Committee (ICC) hearing "chrono" which resulted in a "7 month mitigated SHU term." *Id.* at 23. Roettgen claims Paramo and Frijas did so "in concert to punish" him for "continuing to report staff misconduct" both to Internal Affairs and via his administrative grievances. *Id.* at 23–24; *see also* Decl. in Supp. of Compl. at 28–29.

C.   42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

D.   Retaliation Claims

The Court finds Roettgen's allegations of retaliation are pleaded with enough factual sufficiency to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Thus, they survive the "low threshold" set for sua sponte screening as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took

---

[2] To the extent Roettgen invokes the Fifth Amendment with respect to his RVR hearing, he fails to state a claim upon which § 1983 relief can be granted. The Fifth Amendment's Due Process clause only applies to the federal government. *See Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (citing *Betts v. Brady*, 316 U.S. 455, 462 (1942) ("Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safe-guarded against state action in identical words by the Fourteenth."), *overruled on other grounds by Gideon v. Wainwright*, 372 U.S. 335 (1963); *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States: '*nor shall any State* deprive any person of life, liberty, or property, without due process of law.'") (emphasis in original) (quoting U.S. CONST. amend. XIV).

some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.").

Therefore, the Court will order the U.S. Marshal to effect service upon Defendants on Roettgen's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").[3]

### III. Conclusion and Order

For the reasons explained, the Court:

1. **GRANTS** Roettgen's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Roettgen's trust account the $61.34 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward that initial fee, as well as whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Roettgen's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

///

---

[3] Roettgen is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

4.     **DIRECTS** the Clerk to issue a summons as to Roettgen's Complaint (ECF No. 1) upon Defendants and forward it to Roettgen along with a blank U.S. Marshal Form 285 for each named Defendant. In addition, the Clerk will provide Roettgen with a certified copy of this Order, a certified copy of his Complaint, and the summons so that he may serve each Defendant. Upon receipt of this "IFP Package," Roettgen must complete the USM Form 285 as completely and accurately as possible, include an address where each Defendant may be found and/or subject to service pursuant to S.D. Cal. CivLR 4.1c., and return them to the U.S. Marshal according to the instructions the Clerk provides.

5.     **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants upon receipt and as directed by Roettgen on the completed USM Form 285s, <u>and to promptly file proof of service, or proof of all attempts at service unable to be executed, with the Clerk of Court</u>. *See* S.D. Cal. CivLR 5.2. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

6.     **ORDERS** Defendants, once served, to reply to Roettgen's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

7.     **ORDERS** Roettgen, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Roettgen must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on

Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of service upon Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated: August 19, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge