UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOHN ROETTGEN,
CDCR # V-05142,

                              Plaintiff,

v.

D. PARAMO, et al.,

                              Defendants.

Case No.:  21cv1285-JO (BLM)

**ORDER GRANTING
MOTION TO DISMISS**

## I.      BACKGROUND

Plaintiff John Roettgen, a state prisoner proceeding *pro se* and *in forma pauperis,* filed a civil rights complaint pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  Plaintiff alleges that while housed at the Richard J. Donovan Correctional Facility ("RJD"), in San Diego, California, Defendants planted a weapon in his cell in retaliation for complaining of inmate abuse by guards, denied him due process in the ensuing disciplinary proceedings, and conspired to violate his due process rights.  (*Id*. at 11-24, 28-29.)

Defendants Daniel Paramo, E. Garcia, T. McWay, C. Covel, and V. Cortes, five of the nine Defendants named in the complaint, filed a motion to dismiss the due process and conspiracy claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 16.) Plaintiff filed an opposition to this motion and a request for judicial notice.  (ECF No. 22.)

In this opposition, Plaintiff also included a request to dismiss Defendants Covel and Cortes from this action "as Plaintiff will no longer be pursuing these Defendants" (*id*. at 57-58), which the Court GRANTS.  For the reasons set forth below, the Court also GRANTS the motion to dismiss Defendants Paramo, Garcia and McWay from this case.

## II.   STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

"In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  The court must accept as true all allegations of material facts alleged in the complaint and construe all inferences in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  However, a pro se litigant's pleading still must meet a minimum threshold in providing the defendants with notice of what it is they did wrong. *See Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

## III.   PROCEDURAL HISTORY

In his complaint, Plaintiff alleges that various RJD Correctional Officers abused him while he was incarcerated at RJD from 2009 through 2017.  Because Plaintiff filed and settled three civil rights lawsuits against these officers in 2016 for almost nine thousand dollars, he became a target for further abuse and retaliation.  (ECF No. 1 at 11-13.)

Specifically, Plaintiff alleges that an RJD Officer planted a weapon in his cell in retaliation for his previous complaints. (*Id.* at 16.) As a result, in July 2017, prison officials found an eight-inch piece of metal sitting in plain sight in a glasses case in his cell and he was charged with a Rules Violation Report ("RVR") for possession of a deadly weapon. (*Id.* at 13-17.)

Plaintiff alleges he was denied Fourteenth Amendment due process rights at the ensuing disciplinary hearing on this RVR.[1] Specifically, he alleges that Officer McWay refused to collect evidence and witness testimony as requested by Plaintiff in preparation for this hearing. (*Id.* at 21.) Plaintiff alleges Officer Garcia, the hearing officer, took part in the conspiracy to deny Plaintiff his due process rights and was, therefore, not an impartial hearing officer. (*Id.* at 21-22.) Officer Garcia also allegedly tampered with the hearing by instructing McWay not to ask certain questions of Plaintiff's requested witnesses and refused to postpone the hearing to gather additional evidence. (*Id.*) As a result of these procedural violations which denied him due process, Plaintiff was found in violation of the RVR. Plaintiff alleges that Warden Paramo knew that these procedural violations were taking place but "rubber stamp[ed]" this adverse result anyway. (*Id.* at 22.) As a result, Plaintiff alleges that he 1) suffered a loss of good time credits; 2) was housed at the highest security level in the California Department of Corrections and Rehabilitation ("CDCR") for over four years; 3) "gain[ed] over twenty-four points"; 4) was in "Closed Custody" for over a year; 5) spent seven months in segregated housing at "one of the most dangerous institution[s] in the state, Kern Valley State Prison," and 6) will have the RVR results referenced in future job applications and parole consideration. (*Id.* at 19.)

Defendants Paramo, McWay, Covel, Cortes, and Garcia sought dismissal of Plaintiff's claims alleging denial of his Fourteenth Amendment due process rights. Plaintiff opposed this motion and, in doing so requested that the Court 1) judicially notice

---

[1] Plaintiff's complaint also alleges First Amendment retaliation and conspiracy to retaliate claims which are not the subject of this motion to dismiss.

1
2
3
4

what he claims is a "Senior Hearing Officer Handbook"; and 2) dismiss Defendants Covel and Cortes from this case.   Because the Court grants Plaintiffs' motion to dismiss Defendants Covel and Cortes, the Court will only discuss the allegations concerning the remainder of the Defendants.

5

## IV.   DISCUSSION

6
7

**A.    Plaintiff Fails to Allege that Defendants Interfered with a Constitutionally Protected Liberty Interest**

8
9
10
11
12
13
14
15
16
17
18
19
20
21

Plaintiff argues that his Fifth and Fourteenth Amendment rights to due process were violated in connection to his disciplinary hearing.[2]   Because the procedural due process rights Plaintiff claims he was denied only attach when a constitutionally protected liberty interest is at stake in the proceeding, the Court first examines whether Plaintiff has alleged that this RVR hearing implicated protected liberty interests.   In his opposition, Plaintiff argues the negative outcome of his RVR impacted the following protected liberty interests: 1) he lost good-time custody credits; 2) he faces a lower chance of being released under Elderly Parole Consideration; 3) he was placed in disciplinary segregation for seven months; and 4) he was housed in a higher security facility (Level III instead of Level II). He also appears to argue that the CDCR Senior Hearing Officer Handbook that he attached to his opposition gave rise to an expectation of fairness in prison disciplinary hearings. (ECF No. 22 at 14-15.)   The Court will examine each of these arguments in turn as well as allegations in his complaint that: 1) he was placed in "Closed Custody for over a year;" and 2) "gain[ed] over twenty-four points."   (ECF No. 1 at 19.)

22
23

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."   U.S. Const. amend. XIV, § 1.   "The

24

25
26
27
28

[2]   The complaint fails to state a Fifth Amendment claim because Plaintiff is not challenging actions of the federal government.   *See Lee v. City of Los Angeles*, 250 F.3d at 687, 688 (9th Cir. 2001) ("The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government - not to those of state or local governments."), citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981).

requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (and) (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000), quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

A prisoner is entitled to certain enumerated due process protections when charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id*. at 1077-78. However, those protections adhere only when the disciplinary action implicates a protected liberty interest either by exceeding the sentence in "an unexpected manner" or where an inmate is subject to restrictions which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Where no such protected liberty interest is at stake, the minimum requirements of due process apply, which require only that "the findings of the prison disciplinary board (be) supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985).

### 1. No Protected Liberty Interest Arose from Loss of Custody Credits

Plaintiff argues that his loss of good-time custody credits constitutes a protected liberty interest, such that he should have been afforded full procedural protections outlined in *Wolff* during his RVR hearing. Because earned good-time custody credits can result in a shortened sentence, prisoners generally have a liberty interest in these credits. *In re Rothwell*, 164 Cal.App.4th 160, 165 (2008). In instances where the loss of custody credits does not affect the duration of a sentence, however, there is no protected liberty interest sufficient to invoke the procedural protections of *Wolff*. *Sandin*, 515 U.S. at 484; *Sims v.*

*Maddock*, 2 Fed. Appx. 767, 768 (9th Cir. 2001) ("Here, there was a minor loss of good time credits which is unlikely to alter the balance of his 'life plus three-year' sentence. Thus, there is no cognizable liberty interest at stake here.") (internal citation omitted). Here, Plaintiff concedes that the loss of his custody credits will not affect the duration of his sentence.  In his complaint, he states that "he is serving an indeterminate life term and the credits do not significantly affect Plaintiff where Plaintiff will never be able to serve the whole 69 year term."  (ECF No. 1 at 19 n.6.)[3]  Because these credits cannot affect the actual duration of his sentence one way or another, Plaintiff cannot allege that their loss implicated a protected liberty interest such that due process rights should have been afforded him at the RVR hearing.  *Sandin*, 515 U.S. at 484; *Sims*, 2 Fed. Appx. at 768.

**2.  No Protected Liberty Interest Arose from Effect on Parole Consideration**

Plaintiff further argues that his adverse finding on the RVR reduced his chances of being released on parole, thereby implicating a protected liberty interest.  Noting that "the decision to release a prisoner [on parole] rests on a myriad of considerations," the Supreme Court has found that disciplinary actions do not give rise to a protected liberty interest just because of the impact it may have on a parole decision.  *Sandin*, 515 U.S. at 487.  Because an inmate is "afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct . . . , [t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."  *Id*.  Here, Plaintiff alleges the finding of guilt on the RVR has affected his eligibility for Elderly Parole Consideration under California Penal Code § 3055.  He argues that he would now have eight discipline-free years but for the RVR finding and,

---

[33] If the loss of credits gives rise to a protected liberty interest the claim would be barred. *See Heck v. Humphrey*, 512 U.S. 477, 480-82 (1994) (holding that where success on a § 1983 action would necessarily impact the validity or duration of a sentence a prisoner must first invalidate the underlying conviction or sentence); *Edwards v. Balisok*, 520 U.S. 641, 643-47 (1997) (holding that the *Heck* favorable termination requirement applies to prisoner § 1983 actions alleging a deprivation of good time custody credits).

consequently, stand a better chance of release on parole at a future parole hearing.  (ECF No. 22 at 14.)  Under *Sandin*, however, the possible impact on parole alleged by Plaintiff is too speculative to rise to the level of a protected liberty interest.  515 U.S. at 487.

### 3. No Protected Liberty Interest Arose from Change in Custody Level

Plaintiff further alleges that, as a result of his RVR finding, he has been confined under higher security conditions.  Specifically, he contends he has (1) been housed at the highest security level facilities in the CDCR for over four years; (2) has "gain[ed] over twenty-four custody points"[4]; (3) was in "Closed Custody[5] for over a year"; and (4) "would have at least been in Level III[6] but for the RVR.  (ECF No. 1 at 19; ECF No. 22 at 14-15.)  Absent a showing of significantly different conditions of confinement, the placement of a prisoner "at a 'level IV' prison rather than a 'level III' prison does not . . . present an 'atypical and significant hardship.'"  *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007), quoting *Sandin*, 515 U.S. at 486; *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he Due Process Clause [does not] in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system.")

Here, Plaintiff does not allege any specific facts about the conditions of confinement in "Closed Custody," in a Level III or IV prison, or as a result of his gain of "over twenty-

---

[4] Plaintiff appears to allege that this is an increase in classification points which the CDCR uses to calculate a Reclassification Score Sheet to determine an inmate's placement.  *See* Cal. Code Regs., tit. 15 § 3375.4.

[5] "Close Custody . . . shall be in cells within Level II, III and Level IV facilities in housing units located within an established facility security perimeter," with "direct and constant" supervision of inmates by staff.  Cal. Code Regs., tit. 15 § 3377.1(2)(A)-(D).

[6] Within the CDCR system, "Level I facilities and camps consist primarily of open dormitories with a low security perimeter.  Level II facilities consist primarily of open dormitories with a secure perimeter, which may include armed coverage.  Level III facilities primarily have a secure perimeter with armed coverage and housing units with cells adjacent to exterior walls.  Level IV facilities have a secure perimeter with internal and external armed coverage and housing units . . . or cell block housing with cells non-adjacent to exterior walls."  Cal. Code Regs., tit. 15 § 3377(a)-(d).

four points," sufficient to support a finding that they represented a significant and atypical change in his conditions of confinement.  Absent such allegations, the complaint fails to plausibly allege a protected liberty interest arising from his change in housing.  *See Meachum*, 427 U.S. at 224 ("[W]e cannot agree that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause."); *Grant v. Cate*, No. 14cv00727-EPG (PC), 2016 WL 259135, at *3 (E.D. Cal. Jan. 21, 2016) (mere allegations of placement in close custody "do not indicate that he has been subjected to terms of confinement outside the bounds of those contemplated by a prison sentence, or outside the normal limits or range of custody which the conviction has authorized the State to impose.")

### 4.  No Protected Liberty Interest Arose from Disciplinary Segregation

Finally, Plaintiff argues that his RVR hearing resulted in discipline of a seven-month term in disciplinary segregation, a condition of confinement that implicates a constitutionally protected liberty interest.   The Supreme Court has held that a prisoner's "discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486.  A prisoner cannot therefore rely on disciplinary segregation, in and of itself, but must assert a dramatic departure from the standard conditions of confinement before due process concerns are implicated from a stay in disciplinary segregation.  *Id.* at 485-86.

Here, Plaintiff alleges he was required to serve his seven-month segregated housing term in "one of the most dangerous institution[s] in the state, Kern Valley State Prison." (ECF No. 1 at 19.)  Aside from the conclusory and general statement of Kern Valley State Prison's dangerousness, he does not allege any specific facts about his confinement there that might support a finding that the conditions there represented a significant and atypical change in the conditions of confinement from RJD.  *See Sandin,* 515 U.S. at 486 (finding no protected liberty interest where "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody."); *Resnick v. Hayes*, 213 F.3d 443, 447-49 (9th Cir. 2000) (prisoner's

placement and retention in segregated housing did not implicate a protected liberty interest because it was not "materially different from those conditions imposed on inmates in purely discretionary segregation" and did not allege it created "a major disruption" in his environment).   Therefore, Plaintiff's allegation he served a seven-month disciplinary segregation term, without more, is not sufficient to plead that a protected liberty interest was at stake during the RVR hearing.

### 5. No Protected Liberty Interest Arose from the Handbook

In his opposition, Plaintiff argues that a protected liberty interest arose from the expectation of fairness created by the CDCR Senior Hearing Officer Handbook.  (ECF No. 22 at 15.)  He attaches a copy of this document to his opposition, which he contends is "a CDCR Authoritative Tome on the subject of processing Inmate Disciplinary, Investigations and Hearings," and requests the Court take judicial notice of it in considering the motion to dismiss.  (*Id*. at 59-136.)  The Court will first consider the threshold question of whether it should take judicial notice of this document before considering its contents.

The Court generally may not consider materials beyond the four corners of the complaint on a Rule 12(b)(6) motion to dismiss.  *Lee*, 250 F.3d at 688.  Materials allowed to be considered include documents attached to or incorporated by reference in a complaint and materials that can be judicially noticed.  *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 (9th Cir. 1998).  Types of materials which are suitable for judicial notice include facts that are readily capable of accurate determination by sources whose accuracy cannot reasonably be questioned.  *See* Fed. R. Evid. 201(b)(1).  Judicially noticeable materials include court records, *United States v. Wilson*, 631 F2d 118, 119 (9th Cir. 1980), matters of public record, *Lee*, 250 F.3d at 689, and state agency records.  *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.")

The proffered Handbook is not attached to the complaint or incorporated therein: therefore, this document can only be considered if it is judicially noticeable. Plaintiff has not established that it is a public record or official government agency document.

Defendants vigorously object to its authenticity and argue that no such official handbook exists.  (ECF No. 25 at 4-5.)  As this document's accuracy and authenticity are disputed, the Court declines to take judicial notice of it or accept Plaintiff's argument that it is the source of a protected liberty interest.

**B.    Plaintiff has not Alleged that Defendants Violated Minimum Due Process Requirements**

As set forth above, Plaintiff has failed to plausibly allege that his RVR hearing implicated protected liberty interests.  Therefore, the Fourteenth Amendment only entitled him to minimum due process protections for his RVR hearing, rather than the more extensive procedural protections outlined in *Wolff*.  In order to determine whether Plaintiff has adequately pled a violation of Fourteenth Amendment due process, the Court next considers whether Plaintiff has alleged that he was denied the minimum due process protection available to prisoners for his RVR hearing.

Even in situations where no protected liberty interest arises, prisoners still have minimum due process rights of "avoiding punishments arbitrarily imposed." *Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999). "*Hill*, like *Wolff*, restates the fundamental principle of due process in prison disciplinary hearings - 'the minimum requirements of due process' require that 'the findings of the prison disciplinary board (be) supported by some evidence in the record.'" *Id*., quoting *Hill*, 472 U.S. at 454-55.

Here, while Plaintiff alleges a litany of procedural wrongs against Defendants McWay, Garcia, and Paramo, he does not allege that his RVR finding was arbitrary or supported by no evidence in the record.  To the contrary, Plaintiff acknowledges the disciplinary conviction was supported by the discovery of the weapon in his cell. *See Hill*, 472 U.S. at 455 ("We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . . .'") "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the

credibility of witnesses, or weighing of the evidence." *Id*.  While Plaintiff contends that this weapon was planted, the fact of its discovery in its cell renders the RVR report supported by some, if meager, evidence and therefore not completely arbitrary.

Because Plaintiff has neither pled entitlement to the full procedural protections under *Wolff* nor a violation of minimum due process protections, his Fourteenth Amendment claims fail.  The Court grants Defendants' motion to dismiss these claims against them.  In addition, because the complaint fails to plausibly allege a violation of Plaintiff's right to due process, it also fails to plausibly allege a conspiracy to violate that right.  *See Cassettari*, 824 F.2d at 739 (noting that the absence of a 42 U.S.C. § 1983 deprivation of rights precludes a conspiracy claim based on the same allegations).  Accordingly, the motion to dismiss Plaintiff's claim for conspiracy to deny due process is granted and that claim is dismissed from the complaint.

## D.   Qualified immunity

Defendants argue they are entitled to qualified immunity from damages on the basis that Plaintiff has not stated a Fourteenth Amendment due process claim.  (ECF No. 16-1 at 18-19.)  Because that claim has been dismissed from the complaint for failure to state a claim, the Court declines to address qualified immunity at this time.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.")

## V.   LEAVE TO AMEND

In his opposition Plaintiff requests leave to amend his complaint should the Court grant Defendants' motion to dismiss.  (ECF No. 22 at 19.)  He identifies evidence and questions for witnesses which he contends were excluded from the disciplinary hearing. (*Id*. at 9-11, 22-25, 32-33, 48-50, 52-53.)

21cv1285-JO (BLM)

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Plaintiff seeks to add allegations that he was denied the ability to call witnesses and submit evidence at the disciplinary hearing. While he does not indicate an intention to include allegations about changes in the conditions of his confinement, the Court will grant leave to amend. It is not absolutely clear Plaintiff cannot amend to include allegations that his placement in Close Custody for over a year and his seven-month stay in disciplinary segregation involved conditions of confinement which were so atypical and significant so as to fall outside the range of confinement normally expected by inmates in relation to the ordinary incidents of prison life. *See Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (holding that in determining whether a prison hardship is atypical and significant, the court relies on a "condition or combination of conditions or factors [that] requires case by case, fact by fact consideration.")

## VI.   CONCLUSION AND ORDER

Based on the foregoing, the Court grants the motion to dismiss brought by Defendants Paramo, McWay, and Garcia pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 16] and dismisses the Fourteenth Amendment due process and conspiracy to deny due process claims against them without prejudice. The Court grants Plaintiff's request to dismiss Defendants Covel and Cortes from this action and dismisses those Defendants without prejudice.

The Court grants Plaintiff forty-five (45) days leave from the date of this Order in which to file an amended complaint. Plaintiff's amended complaint must be complete by itself without reference to his original pleading; Defendants not named and any claim not re-alleged in his amended complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the

21cv1285-JO (BLM)

original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")  If Plaintiff fails to timely amend or informs the Court of his intention not to amend, this action will proceed with the remaining claims in the original complaint alleging retaliation and conspiracy to retaliate.

   **IT IS SO ORDERED**.

Dated:  August 4, 2022

Hon. Jinsook Ohta
United States District Judge

21cv1285-JO (BLM)